IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 17-cr-00327-WJM-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. Andre Gilmore

        Defendants.

---

## MOTION TO SUPPRESS

---

Andre Gilmore, by and through counsel, Brian R. Leedy, moves this Court for an Order suppressing any and all physical evidence and statements obtained as a result of Mr. Gilmore's search and arrest on January 13, 2013. The seizure, search, and arrest were conducted in violation of Mr. Gilmore's Fourth Amendment rights and his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Mr. Gilmore states the following in support of his motion:

**I.    Factual Background**

On May 12, 2017, Denver Police Department officers seized Mr. Gilmore while conducting "proactive crime suppression". According to discovery, officers observed a male, later determined to be Mr. Gilmore, on a bicycle behind 290 Speer Boulevard and 444 Sherman Street. Officers observed a male riding a bike slowly and made contact. Officers allege that upon being contacted the male explained that he was "looking for cigarette butts", and was asked for his name, date of birth, and if he had a Colorado "ID". Reports further allege that the male provided the requested information and said he had a Colorado "ID". An officer cleared the

name provided and "found it to be No Record". Subsequently, Mr. Gilmore was taken into custody "to prevent escape" since law enforcement felt Mr. Gilmore was being "evasive". A firearm was found on Mr. Gilmore.

## II. Law and Argument

"[T]he central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." *United States v. Ortiz*, 422 U.S. 891, 895 (1975). A principle tenet of the Fourth Amendment is the requirement that searches and seizures are reasonable and ordinarily require warrants, issued based on probable cause. See *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976). Further, reasonable searches and seizures necessarily "limit[] police use of unnecessarily frightening or offensive methods of surveillance and investigation." *Ortiz*, 422 U.S. at 891; see, e.g., *Terry v. Ohio*, 392 U.S. 1, 16 (1968); *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 531 (1967).

Police and citizen encounters come in three varieties. The first involves the voluntary cooperation of a citizen in response to non-coercive questioning. See *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994). The second is a Terry-stop, involving a brief, non-intrusive detention when officers have a reasonable suspicion that a person committed a crime or is about to do so. See *Terry*, 392 U.S. at 16. The third type of encounter is an arrest. See *Madrid*, 30 F.3d at 1275.

In this case, Mr. Gilmore was arrested. Accordingly, all subsequently discovered evidence must be suppressed because law enforcement did not have probable cause for such an encounter. Further, any statements Mr. Gilmore made pursuant to a custodial interrogation must be suppressed, as law enforcement violated Mr. Gilmore's *Miranda* rights.

### A.   Because Mr. Gilmore was arrested, and the arrest was unsupported by probable cause, he was unlawfully seized by law enforcement.

Law enforcement must either have an arrest warrant or possess probable cause to arrest an individual. See *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008). "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added). The probable cause inquiry is an objective one. Additionally, arrests are characterized by the intrusive or lengthy nature of the detention. See *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). A seizure for the purposes of the Fourth Amendment occurs where a reasonable person would have believed that he is not free to leave. See *United States v. Mendenhall*, 466 U.S. 544 (1980); *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (A suspect is in custody when a "a reasonable person in suspect's position would have understood the situation as the functional equivalent of a formal arrest."). Further, a detention ceases to be a Terry-stop and becomes an arrest if it continues for an excessive time-period or closely resembles a traditional arrest. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004); see also *United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir.1996) ( "an unreasonable level of force transforms a Terry-detention into an arrest requiring probable cause").

In this case, Mr. Gilmore was not free to leave when law enforcement seized him. The encounter rose to the level of an "arrest," and the evidence in this case must be suppressed as the fruit of an unlawful arrest. At the time such an arrest occurred, law enforcement did not have probable cause for such an encounter. "[P]robable cause must exist at the moment of the arrest," and if it does not exist, all subsequently discovered evidence "must be suppressed" *United States v. Hansen*, 652 F.2d 1374, 1390 (10th Cir. 1981).

>    B.   **If the stop was a Terry stop, then the pat down search was unlawful because it was unsupported by reasonable suspicion.**

"A pat-down is a 'search' under the Fourth Amendment." *United States v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003). It has been a long-standing principle of Fourth Amendment jurisprudence both by the Supreme Court and Tenth Circuit that to conduct a pat down search, law enforcement must first have a reasonable suspicion. *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979); United States v. Ward, 682 F.2d 876 (10th Cir. 1982). In applying Terry, Courts have held that law enforcement officer may only constitutionally conduct a warrantless pat-down search of a person if the officer harbors an articulable suspicion that the person is presently armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996); *United States v. Wald*, 216 F.3d 1222, 1225 (10th Cir. 2000); *United States v.Dell*, No. 11-4078, 2012 WL 2443416, at *5 (10th Cir. June 28, 2012); *United States v. House*, 463 F. App'x 783, 786-78, 788 (10th Cir. 2012).

To justify touching a citizen and searching their person, police must additionally have a reasonable belief that a detained person poses a threat to the officer's safety. Id. at *5; *Terry*, 392 U.S. at 27, 30; *Ybarra*, 444 U.S. at 91-93; *Sibron v. New York*, 392 U.S. 40, 63 (1968) ("[B]efore [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so.  In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."). "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a limited search of the individual "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 24.  A pat-down search requires additional suspicion that the suspect may be armed

4

and dangerous; it may not be performed unless the officer reasonably suspected the defendant might be carrying a weapon. *United States v. Dennison*, 410 F.3d 1203, 1211 (10th Cir. 2005).

A *Terry*-type protective search—conducted of course without a warrant—is lawful if and only if there is reason to believe the suspect is both "dangerous" and that he "may gain immediate control of weapons":

> Our past cases indicate then that protection of police and others can justify protective searches when . . . the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Accord *Ybarra*, 444 U.S. at 92-93; *Sibron*, 392 U.S. at 63. See also *Ward*, 682 F.2d at 876; *Davis*, 94 F.3d at 1468; *Wald*, 216 F.3d at 1225; *House*, 463 F. App'x at 786-78, 788. See also *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993) ("For a protective search to be 'justified at its inception,' the officer must not only harbor an articulable and reasonable suspicion that the person is armed and dangerous, the officer must also be 'entitled to make a forcible stop.'"). The reasonableness of law enforcement's protective search "depends upon the justification for the [pat down]." *King*, 990 F.2d at 1557.

In this case, any pat-down search of Mr. Gilmore for weapons was unconstitutional. At the time of the pat-down search of Mr. Gilmore, police did not have adequate reasonable suspicion that he was presently armed and dangerous. Nor do law enforcement's justifications establish the requisite reasonable suspicion. There was no particularized reason to believe Mr. Gilmore, at the moment he was ordered to undergo to a pat-down, posed a danger to the officers.

None of the factors given by law enforcement, taken alone or in their totality, would justify a pat down search of Mr. Gilmore. See *United States v. Davis*, 94 F.3d 1465, 1468-69

(10th Cir. 1996) (reversing the district court's finding of reasonable suspicion). Mr. Gilmore's presence in an area alleged to have an incidence of theft from vehicles is not a basis, standing alone, for concluding that Mr. Gilmore was armed and dangerous. See id. at 1468; see also *Brown v. Texas*, 443 U.S. 47, 52 (1979); *Dell*, 2012 WL 2443416; *United States v. Brown*, 333 F. App'x 377, 379 (10th Cir. 2009).

### C.     Mr. Gilmore's Miranda rights were violated.

Finally, any statements seized after Mr. Gilmore's arrest must be suppressed because they were obtained in violation of his *Miranda* rights. *Miranda* provides that the government may not use statements obtained from custodial interrogation of a defendant unless procedural safeguards are used to secure the privilege against self- incrimination. Statements made during a custodial interrogation are only admissible if the interrogation is preceding by a reading of the Miranda rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Bautista*, 145 F.3d 1140, 1146 (10th Cir. 1998). Procedural safeguards set forth in Miranda are designed to protect a suspect's Fifth Amendment privilege against self-incrimination during a period of custodial investigation. See *Moran v. Burbine*, 475 U.S. 412, 420 (1986).

In this case, law enforcement engaged in a custodial interrogation of Mr. Gilmore without ensuring him his Miranda rights. All statements made as a result must be suppressed.

### III.    Conclusion

In this case, the officers had neither probable cause to arrest nor a particularized or objective basis to suspect that Mr. Gilmore was armed and dangerous. Accordingly, his arrest or his *Terry*-stop pat-down search and investigation violated Mr. Gilmore's Fourth Amendment rights. Further, Mr. Gilmore's Fifth Amendment Miranda rights were also violated. All resulting

evidence and statements stemming from the illegal search, seizure, and interrogation must be suppressed as fruits of the poisonous tree.

WHEREFORE, Mr. Gilmore respectfully moves this Court for an Order suppressing all evidence obtained as a result of the unlawful and illegal arrest, search, and interrogation on May 12, 2017, as well as any evidence derived therefrom. Mr. Gilmore requests a hearing on this issue. The parties request permission to contact chambers directly in order to schedule a motions hearing date that accommodates the Court's calendar and those of the parties.

Respectfully submitted,

/s/ Brian R. Leedy
Brian R. Leedy
Haddon, Morgan & Foreman P.C.
150 E. 10th Ave
Denver CO, 80203
(303) 831-7364
Email Address:  bleedy@hmflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2019, I electronically filed the foregoing

**MOTION TO SUPPRESS**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties of record, and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Andre Gilmore    (via hand delivery)

    */s/ Brian R. Leedy*
    Brian R. Leedy
    Haddon, Morgan & Foreman P.C.
    150 E. 10th Ave
    Denver CO, 80203
    (303) 831-7364
    Email Address:  bleedy@hmflaw.com