IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 17-cr-00327-WJM-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. Andre Gilmore

        Defendants.

---

## MOTION TO DISMISS

---

        Andre Gilmore, through counsel, Brian R. Leedy, moves this Court this Court to dismiss the Superseding Indictment. This motion is made pursuant to *Barker v. Wingo*, 407 U.S. 514 (1972), *Doggett v. United States*, 505 U.S. 647 (1992), and the Sixth Amendment of the United States Constitution. In support thereof, Mr. Gilmore submits the following:

### <u>BACKGROUND</u>

        On September 14, 2017, the Grand Jury returned a one count indictment charging Mr. Gilmore with a violation of 18 U.S.C. § 922(g)(1). Doc. 1. An arrest warrant was issued on the same date. Doc. 2.

        The investigation which led the indictment is confined to events which occurred on May 12, 2017. On May 12, 2017, Denver Police Department officer Jonathan T. Ryan stopped, seized, and then arrested Mr. Gilmore while conducting "proactive crime suppression." Officer Ryan observed a male riding a bike slowly and stopped him. Officer Ryan alleges that upon being stopped and asked what he was doing, the male explained that he was "looking for

cigarette butts." Officer Ryan asked the male for his name and date of birth and if he had a

Colorado "ID." Reports further allege that the male provided the requested information and said

he had a Colorado "ID." Officer Ryan cleared the name provided and "found it to be No

Record." Officers Ryan and Pacheco handcuffed and arrested Mr. Gilmore "to prevent escape"

since they felt Mr. Gilmore was being "evasive." A firearm was found on Mr. Gilmore.  Special

Agent Benito Martinez, of the Bureau of Alcohol, Tobacco and Firearms, the agent named in the

penalty sheet of the Indictment, was in possession of the firearm seized as of May 2017.

At the time of his arrest Mr. Gilmore had an active warrant in Denver District Court Case

2016CR176.  **Attachment A** – Docket Sheet 2016CR176.  Mr. Gilmore remained in pretrial

detention on the Denver Case until his sentencing on October 1, 2018, after which he was placed

in the custody of the Colorado Department of Corrections (CDOC).  Id, see also **Attachment B** –

CDOC Offender Search.  Based on discovery received by federal agents the government knew

Mr. Gilmore was in state custody after his arrest.

On March 27, 2019, 18 months after Mr. Gilmore was indicted and a warrant was issued

for his arrest, the government petitioned the court for Writ of Habeas Corpus Ad Prosequendum.

Doc. 4.

## ARGUMENT AND APPLICABLE LAW

### *Summary of the Argument*

The Sixth Amendment of the United States Constitution condemns lengthy delay

between indictment and arrest.  In this case, the government obtained an indictment against Mr.

Gilmore, then intentionally delayed the proceedings against only Mr. Gilmore for 18 months,

despite being aware of his location in pretrial detention, and post sentencing confinement. Mr.

Gilmore was not responsible for this delay. Mr. Gilmore was ignored, left uniformed of the

federal charge, and thus left unable to assert his Sixth Amendment right to a speedy trial. The refusal of the government to act on its own charges has caused presumptive and actual prejudice to Mr. Gilmore's defense, rendering the outcome of a trial unreliable. Accordingly, the indictment should be dismissed.

***The Barker factors***

The Sixth Amendment creates a personal right to the accused.  U.S.S.A. IV.  The Supreme Court has identified four factors to analyze whether the government has violated this right. These factors, set out in *Barker v. Wingo,* 407 U.S. 514, 530 (1972), are:

(1) the length of the delay;

(2) the reasons for the delay and whether the government or the defendant is responsible for it;

(3) whether the defendant has asserted his rights; and

(4) whether he has suffered prejudice as a result of the delay.

Because Mr. Gilmore remained in custody with no counsel and no discovery, he had no means of commencing presentation of his defense.

## 1.   *Length of delay*

The length-of-delay factor "is actually a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992).  First, it acts as a catalyst, marking "the point at  which courts deem the delay unreasonable enough to trigger the *Barker*" analysis.  *Id.* at 652 n.1.  The Supreme Court has said that this point – the point at which the length of delay triggers the rest of the analysis – is where the delay is deemed "presumptively prejudicial." *Barker*, 407 U.S. at 530. If prejudice is presumed then the remaining *Barker* factors must be considered, in which case "the length of the delay is itself balanced with the other factors." *Id.* at 655.

The judicial consensus of how much time must pass before a delay is presumed prejudicial for purposes of triggering the *Barker* inquiry ranges from eight months to one year. *See United States v. Vassell*, 970 F.2d 1162, 1164 (2nd Cir. 1992) (noting scholarly endorsement of presuming prejudice at eight months); *Doggett*, 505 U.S. at 652 n.1 (noting that most lower courts find "delay 'presumptively prejudicial' at least as it approaches one year"). The Tenth Circuit weighed in on the subject in *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006), agreeing that a delay of one year or more is presumptively prejudicial. *See, also., United States v. Lucien*, 61 F.3d 366, 371 (5th Cir. 1995); *United States v. Beamon*, 992 F.2d 1009, 1012-13 (9th Cir. 1993).  Here, the delay between indictment and arrest/arraignment exceeded 18 months, so it is appropriate and necessary to consider the remaining *Barker* factors.

### 2. *Reasons for the delay*

The Supreme Court has said that "different weights are to be assigned to different reasons for delay." *Doggett* 505 U.S. at 657. If the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice. *Id.* at 656. On the other hand, if the government "intentionally held back in its prosecution . . . to gain some impermissible advantage at trial," the indictment generally must be dismissed. *Id.* Between these two poles lies official negligence, a middle ground "[b]etween diligent prosecution and bad-faith  delay." *Id.* "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 656-57.

This Court must acknowledge first, as the *Barker* Court did, that "a defendant  has no duty to bring himself to trial." *Barker*, 407 U.S. at 527. Here, the government neither forgot the indictment or lost track of Mr. Gilmore. Incarcerated in the prosecutors own back yard, he was

simply ignored. Given that the government was aware of Mr. Gilmore whereabouts in detention, post pretrial and post sentencing, while the indictment languished, "the ultimate responsibility" for the delay "must rest with the government rather than the defendant." *Barker*, 407 U.S. at 531. Even if the delay could be blamed on real negligence, "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. Mr. Gilmore submits the government cannot claim negligence when it knows the defendant is locally incarcerated and simply refuses to bring him to court. Ignorance of the law is no excuse.

### 3. *Whether Mr. Gilmore asserted his speedy trial rights*

The next *Barker* factor asks whether Mr. Gilmore, "in due course, asserted his right to a speedy trial." *Id.* at 651. When a defendant is "unaware of the indictment before his arrest and there is no evidence in the record to contradict him . . . his failure to assert his right to a speedy trial does not weaken his Sixth Amendment claim. *United States v. Jenkins*, 701 F.2d 850, 857 (10th Cir. 1983) Here, despite Mr. Gilmore remaining in local pretrial detention post indictment, and custody in CDOC thereafter, no effort was made on the part of the government to notify him of the pending charge, or bring him to court and have counsel appointed, until a year and a half after the indictment was returned and the arrest warrant was issued. When the government never makes a defendant aware that a charge exists, this factor favors the defendant. See *United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir.), cert. denied, 139 S. Ct. 466 (2018). The burden of protecting one's speedy-trial rights is not placed on the defendant. See *United States v. Vaughan*, 643 F. App'x 726, 731–32 (10th Cir. 2016) citing *Barker* at 527. The third factor should be deemed neutral where a defendant had no knowledge of the indictment during the delay. See *Doggett*, 505 U.S. at 653–54, 112 S.Ct. 2686; (where a defendant was unaware of the indictment

prior to arrest, he "is not to be taxed for invoking his speedy trial right only after his arrest");

*United States v. Erenas–Luna*, 560 F.3d at 778 (holding, where defendant was unaware of his

indictment until his arrest, that "the third *Barker* factor had no application"); *United States v.*

*Watford*, 468 F.3d 891, 906 (6th Cir.2006) ("In the absence of a District Court finding that

[defendant] had knowledge of the federal detainer, and absent record evidence of such

knowledge, we conclude that [defendant] is not to blame for failing to assert his speedy trial

rights despite the detainer.").

### 4. *Prejudice to Mr. Gilmore*

The final element of the *Barker* test is whether Mr. Gilmore has been prejudiced by the

post-indictment delay.

### *Particularized Proof of Prejudice Not Necessary*

The Supreme Court has admonished that affirmative proof of particularized prejudice is

not essential to every speedy trial claim. *Doggett*, 505 U.S. at 655. Courts "generally . . .

recognize that excessive delay presumptively compromises the reliability of a trial in ways that

neither party can prove, or for that matter identify." *United States v. Graham*, 128 F.3d 372, 375

(6th Cir. 1997).

This is especially true here, where Mr. Gilmore, as a prisoner, lacked all control over his

access potential evidence in his favor. Due to the government's delay potential witnesses were

never identified, potential evidence was not sought soon after his arrest, and evidence relevant to

Mr. Gilmore's conduct before law enforcement made contact was not obtained.

The delay leaves Mr. Gilmore in the impossible situation of arguing about what might

have been, if only the government had not ignored him.  The presumption relieves him of this

impossible burden.  *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (proof of

actual prejudice not required where first three Barker factors proven and post-indictment delay was two years). The prejudice caused by the post-indictment delay is exacerbated by the pre-indictment delay. Though he does not challenge the 4 month preindictment delay as a separate due process violation, it is difficult to deny that this delay has further undermined his ability to defend himself. Mr. Gilmore had no way of knowing that charges relating to that day would be brought. Meanwhile, evidence material to his stop and arrest were lost. Consequently, he is prejudiced.

### *Mr. Gilmore Has Suffered Actual Prejudice*

Despite the diminished importance of showing actual prejudice under the circumstances present here, Mr. Gilmore has in fact been harmed by the post-indictment delay. The government refused to execute the warrant issued for Mr. Gilmore's arrest and petition the Court for a Writ until 18 months after his arrest. This, the government knew, would result in Mr. Gilmore being appointed counsel, and initiated proceedings in the instant matter during the pendency of his state proceedings.

The predictable result of the delay is a resolution in the state case that failed to take into account the federal charge filed over a year before Mr. Gilmore was sentenced. Accordingly, Mr. Gilmore negotiated a plea in the state matter without knowledge of the federal charge and received a sentence that did not take into account the existence of a federal case.

Further, since the Writ was requested by the government, Mr. Gilmore has been removed from the CDOC facility where he was serving his state sentencing and has been moved to a pretrial facility. On this subject, the *Barker* court had harsh words:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the

individual. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.

*Barker*, 407 U.S. at 533, (citations omitted).

Each of the four *Barker* factors supports a finding that Mr. Gilmore's Sixth Amendment right to a speedy trial has been violated. The 18 month post indictment delay is presumptively prejudicial. The government alone is to blame for the delay. Mr. Gilmore was left uninformed of the charge and consequently precluded from timely appearing to answer to the allegations, having counsel appointed, and effectively defending the case. The delay has caused actual prejudice.

### Remedy

The appropriate remedy here is to dismiss the indictment. The real question is whether it should be with or without prejudice. Only the latter adequately protects the Sixth Amendment. For if the government is allowed to re-indict Mr. Gilmore, and then quickly re-arraign him, it will do more than neatly circumvent the protections of the constitution. Allowing such an end-run around Mr. Gilmore's rights will condone a prolonged and unjustified delay in prosecuting him. And it will also encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority: only a few will challenge the delay, fewer still will prevail; and those few that do prevail will be re-indicted. Such a policy will consign suspects like Mr. Gilmore to permanent Sixth Amendment irrelevance.

The indictment should be dismissed with prejudice.

Respectfully submitted,

*/s/ Brian R. Leedy*
Brian R. Leedy
Haddon, Morgan & Foreman P.C.
150 E. 10th Ave
Denver CO, 80203

(303) 831-7364
Email Address: bleedy@hmflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2019, I electronically filed the foregoing

## MOTION TO DISMISS

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties of record, and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Andre Gilmore         (via hand delivery)

/s/ Brian R. Leedy
Brian R. Leedy
Haddon, Morgan & Foreman P.C.
150 E. 10th Ave
Denver CO, 80203
(303) 831-7364
Email Address: bleedy@hmflaw.com