IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.:  17-cr-00327-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**ANDRE DANIEL GILMORE**,

    Defendant.

_____

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
[ECF No. 21]**
_____

The United States of America submits its response in opposition to the defendant's Motion To Suppress [ECF No. 21].

The Court should deny the motion because:  (1) Officer Ryan had a reasonable articulable suspicion to contact the defendant; (2) Officer Ryan asked the defendant routine booking questions; (3) Officer Ryan had probable cause, at the very least reasonable suspicion, to search the defendant; and, (4) even if a violation occurred, officers would have inevitably discovered the firearm on the defendant's person.

The Government requests an evidentiary hearing on the defendant's motion to present testimony supporting its response.

**BACKGROUND**

On May 12, 2017, Denver Police Department ("DPD") Officer Ryan was conducting proactive crime suppression along the Speer Boulevard corridor in Denver, Colorado.  Officer Ryan was conducting crime suppression in that area because of

1

recent property crimes.  At approximately 2:40 a.m., Officer Ryan observed a male, later identified as the defendant, Andre Gilmore, on a bicycle peddling behind a building located at 290 Speer Blvd.  Officer Ryan then observed Gilmore peddle behind a different building located at 444 Sherman St.  Officer Ryan positioned his patrol vehicle just north of Mancinelli Auto Repair Center (*located at 375 Logan St.*) in order to keep observing Gilmore.

Gilmore slowly peddled away from Officer Ryan.  Officer Ryan believed Gilmore was casing the buildings because he was riding his bike at a pace slower than a "human walk."  Officer Ryan approached Gilmore and asked what he was doing behind the buildings.  Gilmore responded that he was "looking for cigarette butts."  Officer Ryan asked Gilmore for his name and he replied, "Waldon Grey, 10-30-1983."  Officer Ryan cleared the name and found no record.  Based on his training and experience, Officer Ryan believed Gilmore to be lying about his name.  Officer Ryan called for a cover officer.

Officer Ryan handcuffed Gilmore and detained him once a cover officer arrived.  Officer Ryan handcuffed Gilmore to prevent escape and because Gilmore appeared evasive.  Officer Ryan explained to Gilmore that he was engaging in suspicious activity and that he gave a false name.  Officer Ryan also explained that it would be best if Gilmore was truthful.  Gilmore then said his name was Andre Gilmore and he had a gun on him.  Officers then recovered a loaded, Glock, Model 43, 9mm pistol, bearing serial number BCUE141, from Gilmore's front, right jacket pocket.  Officers also recovered a wallet from Gilmore with an ID card bearing Gilmore's name.  Officers ran Gilmore's name through police databases and determined that Gilmore had an active arrest

warrant for felony assault out of Denver.  Officers also conducted a records check on the firearm and found it to be stolen.

On September 14, 2017, a federal Grand Jury returned a one count Indictment [ECF No. 1] against Gilmore for being a felon in possession of firearm, in violation of 18 U.S.C. § 922(g)(1).  Gilmore made his initial appearance in federal court on April 3, 2019. *See* ECF No. 9.  On May 30, 2019, Gilmore filed a Motion To Suppress [ECF No. 21] arguing that the seizure, search, and arrest violated his Fourth Amendment rights and his rights under *Miranda v. Arizona*, 384 U.S. 436 (1996).

DPD Officer Ryan's encounter with Gilmore and the subsequent seizure, search, and arrest are all lawful.  The Court should deny his motion [ECF No. 21].

## ARGUMENT

### A. Office Ryan Conducted A Lawful *Terry* Stop.

Officer Ryan acted reasonably when he conducted a *Terry* stop on Gilmore at approximately 2:40 a.m. on May 12, 2017.  The stop was justified at its inception and Officer Ryan's actions during the stop were reasonable in scope.  Under the totality of the circumstances, Officer Ryan's actions were consistent with the Fourth Amendment and all evidence retrieved as a result of the stop is admissible.

#### 1. The stop.

Stopping Gilmore on his bike, without having witnessed a traffic violation, was a *Terry* investigative detention. *See, e.g., United States v. Walker*, 879 F. Supp. 1087, 1090 (D. KS. Feb. 15, 1995).   A *Terry* stop is a seizure of a person and therefore Fourth Amendment protections apply. *United States v. Morgan,* 855 F.3d 1122, 1125 (10th Cir. 2017).  The Fourth Amendment protects "the right of the people to be secure

in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. This protection only reaches unreasonable seizures. *United States v. McHugh*, 639 F.3d 1250, 1260 (10th Cir. 2011) (O'Brien, C.J., concurring) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'"). Thus, a reasonable seizure does not violate the Fourth Amendment. When analyzing whether a *Terry* stop is reasonable, courts engage in a two-step inquiry to determine whether the stop was: (1) "justified at its inception;" and, (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Kitchell*, 653 F.3d 1206, 1216 (10th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

### a. Officer Ryan had a reasonable articulable suspicion that Gilmore had engaged in or was engaging in criminal activity.

Gilmore does not dispute whether the stop was justified at its inception. Even so, the following facts justify the initial encounter:

- Officer Ryan was on duty at 2:40 a.m.;

- Officer Ryan was conducting proactive crime suppression along the Speer Boulevard corridor because of recent property crimes;

- Officer Ryan observed Gilmore riding a bike slower than a "human walk;"

- Gilmore was riding his bike at such pace behind two commercial businesses (one then the other); and,

- Officer Ryan knew that both commercial businesses were closed at 2:40 a.m.

Based on his observations and training and experience, Officer Ryan believed Gilmore to be casing the businesses. Thus, he contacted Gilmore.

These facts establish that the initial stop was objectively justified. *See United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (internal quotation marks and citation omitted) ("This court looks only at whether the stop was objectively justified; the officer's subjective motives are irrelevant").

### b. Officer Ryan's actions were reasonably related in scope to the circumstances that justified the initial contact.

#### i. Initial questioning.

Officer Ryan asked Gilmore what he was doing, then asked for his name and whether Gilmore had a Colorado identification card. Those routine questions are permissible. *Morgan*, 855 F.3d at 1126; *Cf. United States v. Zubia-Melendez*, 263 F.3d 1155, 1161 (10th Cir. 2001) ("[A]n officer conducting a traffic stop may request vehicle registration and a driver's license, run a computer check, ask about travel plans and vehicle ownership, and issue a citation").

#### ii. Handcuffing Gilmore.

When Gilmore gave a name that came up with no record to Officer Ryan, Officer Ryan called for a cover officer. When the cover officer arrived, Officer Ryan handcuffed Gilmore to prevent escape and because Gilmore appeared evasive.

Officer Ryan's decision to handcuff Gilmore was reasonable and permissible. "This Circuit has long defended the ability of police officers to conduct safe investigatory stops." *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993). "There are no hard-and-fast rules regarding the reasonableness of force used during investigatory

5

stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct." *Id.* "It is clear, however, that, because safety may require police to freeze temporarily a potentially dangerous situation, both the display of firearms and the use of handcuffs may be part of a reasonable *Terry* stop." *Id.*

It was approximately 2:40 a.m. in an area of recent criminal activity, Gilmore had provided a name to Officer Ryan that came up with no record, and Gilmore appeared evasive. Given those facts, handcuffing Gilmore was permissible.

The mere fact that Officer Ryan handcuffed Gilmore did not automatically convert the *Terry* stop into a formal arrest. *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) ("[A] *Terry* stop does not automatically elevate into an arrest where police officers use handcuffs or place him on the ground"). A police officer's use of handcuffs is permissible when he reasonably believes that handcuffs are necessary to ensure officer safety. *United States v. Copening*, 506 F.3d 1241, 1248 (10th Cir. 2007). Officer Ryan was aware that Gilmore might have already committed a crime: false reporting to authorities, in violation of COLORADO REVISED STATUTES § 18-8-111(1)(a)(IV).[1] Further, the same facts that justified the initial encounter, stated in Section A(1)(A) of this response, justify placing handcuffs on Gilmore. These facts "would warrant a man of reasonable caution to believe that [handcuffing Gilmore] was appropriate." *Copening*, 506 F.3d at 1248 (citation omitted).

### iii. Officer Ryan's statements to Gilmore after placing him in handcuffs.

Once Officer Ryan cuffed Gilmore, he explained to Gilmore that: (1) Gilmore

---

[1] Pursuant to CRS § 18-8-111(1)(a)(IV), a person commits the crime of false reporting to authorities if he "knowingly provides false identifying information to law enforcement authorities."

was engaging in suspicious activity; (2) he believed Gilmore provided a false name; and, (3) it would be best if Gilmore was truthful about his name.  Gilmore then said his name was Andre Gilmore and stated he had a gun on him.  Officer Ryan's statements to Gilmore were reasonable and permissible; they were follow-up as to Gilmore's true identity. *Morgan*, 855 F.3d at 1126 (internal quotation marks and citation omitted) ("Courts have long recognized that questions concerning a suspect's identify are a routine and accepted part of police investigations").

### iv. Recovery of the gun.

Officer Ryan had probable cause to search for Gilmore's gun.  At the very least, he had a reasonable suspicion that Gilmore was armed and dangerous.

#### (a) Officer Ryan had probable cause to search Gilmore for the gun.

Probable cause to search exists when a "prudent person [would] believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).[2]  Here, Gilmore told Officer Ryan he was armed.  Given what Officer Ryan knew at the time (Gilmore was suspiciously casing commercial businesses in a recent crime area at 2:40 a.m. and most likely gave a false name), Gilmore's admission would lead a prudent person to believe that Gilmore did indeed have a gun on his person.  Thus, the search was valid.

*United States v. Sekiya*, 2018 U.S. Dist. LEXIS 206136 (D. NM. Dec. 6, 2018), supports this argument.   In *Sekiya*, law enforcement officers encountered the defendant while investigating a stolen truck report.  Officers received a picture of the

---

[2] This statement made by the Tenth Circuit was in the context of reviewing a search warrant affidavit.  The Government asserts that while applied in a different context, the standard is the same.

7

stolen vehicle and the vehicle's last known location in Albuquerque, New Mexico. Hours later, officers observed a vehicle matching the stolen vehicle's description driving near them. The defendant parked the vehicle in an apartment complex and exited the vehicle. An officer approached the defendant and asked to speak with him. The defendant was carrying clothes and reached into his pockets. The officer directed the defendant to put the clothes down. The defendant then stated he was an FBI Agent. The officer directed the defendant to turn around and put his hands behind his back. Once the defendant turned and put his hands behind his back, the officer asked the defendant if he had any weapons on him, specifically guns or knives. The defendant replied that he had a gun in his left pocket. Officers immediately conducted a pat down search and retrieved a loaded gun from the defendant's left pocket. Officers then handcuffed the defendant and placed him in the back of a patrol vehicle. The defendant was later arrested for possession of a stolen firearm.

The *pro se* defendant moved to suppress, *inter alia*, the firearm on the ground stating that officers lacked probable cause to search him. In analyzing the defendant's claim, the court laid out the framework regarding pat-down searches (reasonableness) and the facts. The court found the defendant was armed and dangerous: "there is no question that the officers knew that Defendant was armed as he admitted he was armed, and the officers had reason to believe he was dangerous because he was seen driving a stolen vehicle." *Sekiya*, 2018 U.S. Dist. LEXIS 206136 at *9-10. The court concluded analyzing this claim by stating "there was probable cause to conduct the search without a warrant." *Id.* at 10.

The present case is similar to *Sekiya*. In both cases: (1) officers encountered the defendant upon suspicion of criminal activity; (2) the defendant admitted to being armed; and, (3) officers searched the defendant immediately after the defendant's admission of being armed. Given these similarities, *Sekiya* supports finding that given the specific facts of this case, Officer Ryan had probable cause to search Gilmore for the gun.

### (b) Officer Ryan had reasonable suspicion to believe Gilmore was armed and dangerous.

Even if probable cause did not exist to search Gilmore, Officer Ryan had a reasonable suspicion that Gilmore was armed and dangerous.

A pat down search during a *Terry* stop is reasonable when the officer has "reasonable suspicion that a person is armed and dangerous." *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007). In *Rice*, the Tenth Circuit elaborated on pat-down searches during a *Terry* stop:

> [A]n officer may perform a pat-down search where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Rice*, 483 F.3d at 1082-83 (*quoting Terry*, 392 U.S. at 27). Here, there is no question that Gilmore was armed: he told Officer Ryan he was. Combining the facts that led to the initial encounter and Gilmore's admission that he had a gun, it was also reasonable for Office Ryan to believe Gilmore was armed and dangerous. Thus, searching Gilmore for the gun was at the very least, reasonable.

**B. Officers Would Have Inevitably Discovered The Gun.**

*Assuming arguendo*, that Officer Ryan's search was unlawful, he and other officers would have recovered the gun anyway.

Officers ran Gilmore's name through police databases after: (1) Gilmore said his name was Andre Gilmore; (2) Gilmore said he had gun on him and officers retrieved it; and, (3) once they recovered Gilmore's ID card from his pocket. Officers then learned that Gilmore had an active arrest warrant for felony assault out of Denver. Officers cannot ignore a valid arrest warrant and would have arrested Gilmore on the warrant. Officers would have found the firearm in Gilmore's pocket during the search incident to arrest.

This falls squarely in line with the inevitable discovery doctrine: "illegally obtained evidence may be admitted if it ultimately or inevitably would have been discovered by lawful means." *United States v. Christy*, 739 F.3d 534, 540 (10th Cir. 2014) (internal quotation marks and citation omitted). Here, the lawful means is the fact that Gilmore had a felony assault arrest warrant. Officer Ryan did not know that at the time he searched Gilmore. Thus, officers would have arrested Gilmore, for a separate reason (the arrest warrant), had Officer Ryan not searched Gilmore immediately upon Gilmore admitting that he had a gun.

Therefore, even if Officer Ryan's search was unlawful, he and other officers would have inevitably discovered Gilmore's gun for a separate reason: executing a valid arrest warrant and conducting a search incident to arrest.

**C.** *Miranda* **Does Not Apply.**

Gilmore argues that all statements made after his arrest should be suppressed because he was not *Mirandized*. This argument is premised on the false accusation that officers arrested Gilmore prior to finding the gun. Gilmore was never subjected to interrogation and therefore *Miranda* does not apply.

Miranda warnings are required when an individual is in custody and subject to interrogation. *Miranda*, 384 U.S. at 444. The Government concedes that Gilmore was in custody when Officer Ryan handcuffed him. However, at no point did Officer Ryan or any other officer interrogate Gilmore while he was handcuffed. "[I]nterrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Here, Officer Ryan further probed about Gilmore's identify after Gilmore provided a name that came up with no record. That is a routine booking question not subject to *Miranda*. *United States v. Dudley*, 2019 U.S. Dist. LEXIS 52924, *9-10 (D. CO. Mar. 28, 2019) (Martinez, J.). Thus, *Miranda* does not apply and Gilmore's statements are admissible.

**D. Conclusion.**

For the above stated reasons, the Court should deny Gilmore's Motion To Suppress [ECF No. 21].

Dated: August 12, 2019.

        Respectfully submitted,

        JASON R. DUNN
        United States Attorney

By:    /s/ *Jason St. Julien*
        JASON ST. JULIEN
        Assistant United States Attorney
        1801 California St., Suite 1600
        Denver, Colorado 80202
        Phone: (303) 454-0100
        Fax: (303) 454-0405
        E-mail: Jason.St.Julien@usdoj.gov
        Attorney for the United States

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 12th day of August 2019, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS [ECF No. 21]** with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following individuals:

    **Brian Rowland Leedy**
    Email:  bleedy@hmflaw.com

    /s/ *Jason St. Julien*
    JASON ST. JULIEN
    Assistant United States Attorney
    1801 California St., Suite 1600
    Denver, Colorado 80202
    Phone:  (303) 454-0100
    Fax:  (303) 454-0405
    E-mail:  Jason.St.Julien@usdoj.gov
    Attorney for the United States